## G. B. SMALL RADIO CO. v. SOUTHWEST GENERAL ELECTRIC CO.

No. 18769. Opinion Filed Nov. 26, 1929.

Rehearing Denied Feb. 25, 1930.

Commissioners' Opinion, Division No. 2.

A. A. Small and G. B. Small, for plaintiff in error.

Mason, Honnold, Harper & Williams, for defendant in error.

BENNETT, C. Defendant in error, Southwest General Electric Company, brought suit against G. B. Small Radio Company and G. B. Small upon open account, and against A. A. Small, who, by written memorandum, guaranteed the payment of the account sued on. The parties will be referred to as they appeared in the trial court.

The petition, in the usual form, alleged that plaintiff sold to defendant G. B. Small Radio Company, during October, November, and December, 1925, and January and February, 1926, certain merchandise reflected by a duly verified itemized account attached to and made a part of the petition, disclosing the balance due to plaintiff to be $1,117.04. It was also alleged that upon delivery of each item shown on said account, an invoice was rendered, and that on the first of each and every month after the said account was opened until April 1, 1926, a full statement of same showing the balance due and all debts and credits thereon was rendered to said G. B. Small and the radio company, who retained such statements rendered without protest or objection whereby same became an account stated. It was also alleged that on October 30, 1925, A. A. Small signed a written guaranty of payment of said account to plaintiff and a copy of such guaranty was attached to and also made a part

of the petition. Separate answers were filed by the radio company and by A. A. Small.

The answers of the company and G. B. Small consist of general denial and plea that plaintiff failed to deliver certain goods ordered by said defendants, by reason whereof they were damaged in loss of profits which otherwise would have been made, also in the expense of certain advertisements of the goods, altogether amounting to $2,500, for which judgment is prayed. A A. Small admits the execution of the guaranty agreement sued on, but says same was without consideration and that he cannot be sued until the controversy between his codefendant and plaintiff is determined.

Plaintiff's reply to these answers consists of general denial, and among other things alleges that plaintiff was not a manufacturer of said goods, but purchased same from factories, and that the demand for radio and radio parts greatly exceeded the supply; that defendants knew this; that it was an established custom of the trade for wholesalers to distribute among their customers such goods as they could obtain, and that during the time mentioned in the cross-petition no dealers in radios were receiving goods except in small quantities, and that all of this was known to defendants; that the damages claimed by defendants were speculative and uncertain and were not in contemplation of the parties at the time the defendants ordered goods from plaintiff.

After a jury was impaneled, the attorney for A. A. Small objected "to the introduction of any evidence as to the liability of A. A. Small, until it shall be established, if it ever is established, that there is a liability from the defendant, the principal, G. B. Small, to the plaintiff in this case," and, "until it has been established that he cannot respond." The court sustained the first part and overruled the latter part of this objection, to which defendants excepted.

Plaintiff introduced evidence tending to show that L. J. Locke was manager and Henry Albreicht assistant manager and in charge of the offices of plaintiff in Tulsa and had been such since September, 1925; that the plaintiff's general offices were in Dallas, Tex., and that the company was a wholesaler of electrical supplies, radios and accessories; that in the fall of 1925, G. B. Small was doing business in Tulsa under the name of G. B. Small Radio Company; that the account of G. B. Small Radio Company was kept in Tulsa and that said Albreicht had supervision and personal knowledge of same,

and that the account sued on, attached as exhibit "A" to plaintiff's petition is correct, and that the balance due thereon is $1,117.-04; that the account was made up from the records in the Tulsa office, each purchase being represented by an invoice, copies of which were sent to purchaser on the day of purchase; that this account represents all sales made and all payments received and that there was received from defendants no complaint that the said statements of account were incorrect; but that same were received and retained without protest. The orders for goods were usually oral and when received were immediately sent to home office to be filled. The first order was early in October and was for Radiola No. 25 and battery, and came to $130.91 which has been paid. Mr. Locke usually took the orders and the goods were delivered by truck to purchaser and receipt was taken upon each delivery. The next order was October 13th and was for $36.45; there was paid on account on January 19, 1926, $500. The next order was October 14th, but was not filled in full, but goods of the value of $370.50 were shipped on that order. Plaintiff lacked three sets of filling the order. A number of orders enumerated were filled. On October 19th there was an order for two No. 30's and five No. 28's and ten No. 25's; a part only of the items was delivered. There was evidence also to the effect that no protest or complaint was made by defendants because of failure of plaintiff to promptly and fully deliver all goods ordered and that plaintiff first learned that the radio company and G. B. Small claimed that they had been damaged when they filed their cross-petition. Proof tended to show that the radio 30's, although orders were taken by the salesmen, were not put out by the factory until in the spring of 1926, but that the manufacturer had been advertising them sometime before that; that no one could purchase these until after February, 1926; that the 25's were hard to get; that the jobbers could not supply them because they could not get them; that this was discussed with G. B. Small who simply wanted them as soon as he could get them; that when taking orders the said Small was informed as to the difficulty in securing deliveries; that there were not enough goods to supply the trade. Small was also informed that plaintiff could not count upon receiving these goods until they were actually in hand. When the goods were received they were divided out and prorated among those who had given orders for same.

The guaranty signed by Mr. A. A. Small was prepared by the treasurer of the company at Dallas who mailed it to the Tulsa office to be signed by A. A. Small, the father of G. B. Small; that the local office and officers at Tulsa had no authority to extend credit. There was evidence by defendants that the Radiolas and supplies already ordered by them were not being received, and that the written guaranty was executed and delivered to plaintiff in order to assure and expedite delivery to them of the goods already ordered from plaintiff, and that this was the only consideration for execution of the guaranty.

On the part of plaintiff the evidence indicated that while they wished security to protect the account, the delay in delivering the goods was entirely due to plaintiff's inability to secure the supplies of Radiolas from the manufacturers; that not only plaintiff, but numerous others throughout the country who handled the same and similar products, were in just as unhappy situation about securing deliveries and they were simply prorating the few sets actually delivered among their customers. It was testified to by defendants that plaintiff promised that back orders would be delivered sometime during November following the execution of the guaranty, and that Mr. Locke, plaintiff's salesman, said that everything would be all right, and that the shipments would come through. The contrary, however, was made to appear by the evidence of plaintiff, who said that he told G. B. Small that, while he was looking for the goods constantly, and was trying to secure them that he could not fix any definite time for delivery of these goods. Evidence was offered by A. A. Small, defendant, to the effect that he knew the difficulty in securing radio outfits, but that he thought the goods could be promptly delivered; that he had seen the advertisement of the Radiola No. 30 and that two sets of Radiolas had been sold by G. B. Small; that the defendant could have sold all that he ordered of these Radiolas and that the profit on the 30's would have been $230 each, and on the 28's $104 each, and on the 25's $57.75 each, and the profits on the loud speakers was 35 per cent. Said defendant said that he was a lawyer and understood that the agreement in effect provided that the plaintiff would supply all the goods that the business required.

The evidence on the part of plaintiff is that no definite time was set for the delivery of the goods, and that the defendants had full information as to the uncertainty

of delivery. Mr. Locke said that he told G. B. Small that he thought it would be six months before anybody could get any of the 30's; that the 25's were hard to get, and that he knew no one else could get them and so informed Mr. Small.

The following evidence of G. B. Small is pertinent:

"Q. Isn't it a fact that these radios No. 28 were very scarce and hard to find anywhere in this territory? A. The demand exceeded the supply. Q. And you were familiar with that condition, weren't you? A. I could not help but be. Q. You knew that they were having the same difficulty that you were in getting those 25's and 28's during that fall, didn't you? A. Yes, sir; they were hard to get. Q. And that was a well-known fact to the trade that the demand exceeded the supply, wasn't it? You knew that to be true? A. Yes, sir. Q. And you knew that each time Mr. Locke was in your store taking your order for these things, didn't you? A. Yes, sir. * * * Q. Now, at any time you had any conversation with Mr. Locke about these 30's, you did not expect him to deliver them to you until they were put on the market by the manufacturer, did you? A. No. Q. You knew it was impossible for him to do it and did not require it of him, did you? A. Not until they were on the market. * * * Q. But you knew that depended on when the manufacturer put them on the market, didn't you? You knew they were the wholesalers and not the manufacturers, didn't you? A. Yes, sir."

There is evidence to the effect that A. A. Small kept the books of the G. B. Small Radio Company, which was owned by his son and whose health was not good, and also that he had charge of the orders given and the goods received thereunder from the plaintiff after the execution of the guaranty contract, and a short time later the health of G. B. Small became precarious, and A. A. Small, the father, took over the business in bulk, took a chattel mortgage on the business for a considerable sum securing the payment of various amounts of indebtedness, "and also against loss on account of the mortgagee's security for the account of the mortgagor to the Southwest General Electric Company of Tulsa, Okla."

Under the foregoing evidence, and much more of a like character, the court submitted all the issues to a jury who rendered their verdict in favor of the plaintiff for the amount sued for, and the defendants appeal. The motion for new trial sets out nine grounds: (1) Because the guarantor was proceeded against in the same suit with the principal defendant. (2) Irregularities in the proceeding by which the defendant was prevented from having a fair trial. (3) Misconduct of the prevailing party. (4) That the verdict is not sustained by sufficient evidence and is contrary to law. (5) That the verdict is contrary to and in disregard of the court's instructions. (6) Errors of law occurring at the trial and excepted to by defendant. (7) Errors of the court in admitting certain evidence. (8) Errors of the court in giving each and all of the instructions. (9) Error of the court in refusing to give instructions requested by defendant.

We think we should omit consideration of grounds Nos. 2, 3, and 5.

The plaintiff in error has filed a brief of more than 100 pages in which every phase of this question has been discussed, but we think there is nothing complex about this lawsuit, and that its merits may be disposed of under a few simple propositions.

1. Did the amended petition state a cause of action? This we think needs little argument. The petition set out the sale by plaintiff of goods to defendants and their failure to pay therefor and the amount due. There was attached to such petition a verified itemized account showing a substantial balance due plaintiff; it was alleged that statements of such account from month to month and perhaps oftener were sent to, received, and retained without objection by defendants. These facts, if admitted, would carry the case to a jury as to the radio company's liability.

2. Attached to the petition was a written guaranty signed by A. A. Small to the effect that he would guarantee to plaintiff payment of such sum or sums as the radio company should be due plaintiff for goods sold or consigned, whether evidenced by open account or note, etc. Plaintiff alleged the shipment of the goods and merchandise to the radio company under its orders and that the same were not paid for. This would seem to state a cause of action against the guarantor, A. A. Small.

3. It is next contended that it was error for the court to permit plaintiff to proceed in one action against the defendants primarily liable for the accounts and also A. A. Small, the guarantor.

Section 222, C. O. S. 1921, provides:

"Persons severally liable upon the same obligation, * * * including * * * guarantors, may all or any of them be included in the same action, at the option of the plaintiff."

It is true that, at common law, the maker

and guarantor could not be sued together on an obligation, but we think the above statute and the clear purpose and intent of our statutes with reference to procedure in civil cases indicate that it is the intent of the law that the rights of parties should be disposed of without unnecessary litigation. In cases where a guarantor is sued along with the principal obligor, the court can, and usually does, properly protect and safeguard the guarantor by providing in the judgment that same shall be satisfied, if possible, out of the principal obligor or his property, before resorting to the guarantor. This provision was contained in the judgment in the case at bar. This is recognized in Senn v. Connelly et al. (S. D.) 120 N. W. 1097, wherein is discussed a statute similar to our section 222, C. O. S. 1921. The court says:

"The appellant * * * has in no manner questioned the right of the plaintiff to join as defendants, the original obligor and the guarantor, and we would take it that he conceded that these parties can, under our statute, be joined as defendants. We think there can be no doubt of this, under section 90, Code Civ. Proc. * * *"

In Hudson Trading Co. v. Durand, 185 N. Y. Supp. (App. Div.) 187, there was involved the question of liability of a guarantor of a buyer's performance of a contract. The guaranty and sales contract seem to have been under separate instruments. The court held the buyer and guarantor were properly joined.

In John Scowcroft & Sons v. Jouflas (Utah) 195 Pac. 633, the guarantor alone was sued. A demurrer was filed for nonjoinder of parties defendant. Upon appeal the action of the lower court in overruling the demurrer was sustained, the court referring to and basing their decision only upon their statute, which is similar to our section above quoted.

In Rice Securities Co. v. Daggs (Cal.) 218 Pac. 484, the court, in discussing the joinder of principal and guarantor in one action, said:

"Since in the first instance the guarantor herein could have been sued alone for the entire debt, it is at least true that no prejudice has resulted from the fact of joining him in the action as a defendant with the principal debtor."

The court cited section 2807 of the California Civil Code, which seems to be the same as our section 5134, C. O. S. 1921. See, also, to the same effect: Shores-Mueller Co. v. Palmer (Ark.) 216 S. W. 295; Smith v. Cum-

mer Mfg. Co. (Tex. Civ. App.) 223 S. W. 338; McConnon & Co. v. Prine (Miss.) 90 So. 730; Lucy v. Wilkins, 33 Minn. 21; People's Co-op. Store Co. v. Blegen (Minn.) 198 N. W. 425.

It would seem in the case at bar that no prejudice was done the guarantor in trying the cases at the same time, for the pleadings raised substantially identical issues and practically the same evidence was relied upon as defense, except that the radio company claimed an affirmative judgment on counterclaim, while the guarantor claimed simply the right of set off founded upon the same facts. It also was not reversible error for the reason that the guarantor, as well as the principal defendant, each acknowledged, in effect, the correctness of the verified account of plaintiff, but each claimed only that damages should be allowed for plaintiff's failure to entirely fill all of the orders of the radio company.

4. It is contended by defendants that the court improperly admitted evidence offered by plaintiff as to his inability to secure goods to fill completely the orders of defendant company. The defendants were claiming damages from the plaintiff for failure to completely fill their requirements of radio goods. We cannot see how, under the facts of this case, it was error for the court to admit evidence on behalf of plaintiff of the fact that the orders were taken with the knowledge of the defendants that the goods were not to be had except from the manufacturers who were largely behind in their production, and that the plaintiff was simply a jobber and could therefore make no deliveries until he could secure deliveries to himself, and that other jobbers and other retailers were having the same difficulty. This very information accompanied the acceptance of the verbal orders. The substance of these facts was testified to by both G. B. and A. A. Small. There was nothing in the guaranty contract, as we construe it, that obliged the plaintiff to deliver at any specified time any particular goods, nor any particular amount of goods, and since the defendants offered evidence of the oral promises of plaintiff's salesman as to deliveries and the time thereof, it certainly was not improper for the plaintiff to offer the statements of defendants or of other witnesses which tended to repel the force of such evidence by defendants.

5. It is next contended that the trial court erred in not ordering separate trials for defendants when it developed that there

were two contracts which did not affect all of the parties. We are not able to follow this reasoning. The radio company, of course, became liable to the plaintiff for the value of the goods bought from and delivered by it. The guarantor became liable for exactly the same amount and to the same party, but his obligation is represented by a separate instrument. The payment by the principal would have released the guarantor; a payment by the guarantor would likewise have released the principal.

6. It is next argued that no consideration was alleged or proven for the guaranty contract. We certainly cannot treat seriously this contention. It is not denied that the plaintiff furnished to the radio company goods using the guaranty contract as a basis for credit. This was the very purpose of the guaranty contract. We shall indulge in no technical reasoning on this phase of the matter.

The plaintiff accepted and acted upon the guaranty contract in making its shipments; the radio company and perhaps the guarantor accepted the benefits of the shipments. In fact, the guarantor, who was the father of the other individual defendant, within a short time after these shipments were made, took over the business, and accepted a chattel mortgage on all of the property of the business to reimburse himself for any loss resulting from the account due to plaintiff and which is here sued on.

7. It is next urged that the court erred in giving an unnumbered instruction shown at page 429 of the record. This instruction is very long, and provides that if the jury should find that the contract of guaranty was made upon consideration that the plaintiff should ship to the radio company certain goods, and they failed to ship the said goods, the consideration therefor would fail and the plaintiff could not recover against A. A. Small, and further that if they failed to recover a verdict against G. B. Small, they could not recover against A. A. Small. On the other hand, if the jury should find against G. B. Small and that there was no failure of consideration for the guaranty contract, then that the verdict should be for the plaintiff against A. A. Small for the same amount as found for the plaintiff against G. B. Small and the radio company. This was only one of several instructions, and when read in connection therewith we find no reversible error. In fact, it is certainly favorable enough to the defendants.

8. It is also argued that the court erred in giving instruction No. ——, on page 432 of the record, the complaint being that the court put the burden of proof upon the defendants as to the counterclaim, and later that the burden was placed upon A. A. Small to prove the allegations set up in his answer. This might be an error of the court if construed as applicable to all the issues raised by the answer in the cause, and if there were no admissions in the cause by the defendants, but from all the evidence it is clear that defendants admit, in effect, the correctness of plaintiff's account, but rely only upon the matter of damages to relieve them, and moreover they admit the circumstances under which the guaranty was made. These facts make it apparent that the court had reference only to the affirmative defense set up in the answer of said guarantor. This is clear also from reading this instruction along with the other instructions given by the court.

The instruction on page 428 is also objected to, but no authority is referred to, and the argument adduced in support of the objection is without merit.

No special requests for instructions were asked by the defendants, except one which is shown at page 417 of the record, and with reference to the refusal of this there is no serious contention made.

The court (properly, we think) submitted this case to a jury on all its phases, that is, as to whether or not plaintiff should recover against the radio company and G. B. Small, whether or not plaintiff should recover against the guarantor, and whether or not the defendants should recover upon their counterclaim, and the right of the guarantor to offset in damages against the plaintiff. The record is comparatively free from error in the admission and rejection of testimony, the charge of the court seems to be fair, and the jury have found for the plaintiff generally and against the defendants, and there is ample evidence in the case to support such finding, for which reasons the judgment of the trial court is affirmed.

TEEHEE, FOSTER, REID, and JEFFREY, Commissioners, concur.

By the Court: It is so ordered.

Note.—See under (3) 14 R. C. L. p. 771; R. C. L. Perm. Supp. p. 3664. (4) 2 R. C. L. p. 194; R. C. L. Perm. Supp. p. 368, et seq. See "Appeal and Error," 4 C. J. §2834, p. 853, n. 61. "Guaranty," 28 C. J. §177, p. 1012, n. 3; §201, p. 1030, n. 73. "Sales," 35 Cyc. p. 572, n. 70. "Trial," 38 Cyc. p. 1779, n. 75.